Larry Ivan Anthony Canfield

657 Saint Catherines Circle

Richmond Hill, GA 31324

(912) 660-6184

tonycanfield38@gmail.com

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2025 JUN -4 P 12: 02

CLERK_____
SO. DIST. OF GA.

June 4, 2025

Clerk of Court

United States District Court

Southern District of Georgia

Savannah Division

125 Bull Street Savannah, GA 31401

4:25- CV- 132

RE: Civil Rights Complaint - Employment Discrimination and Retaliation

Plaintiff: Larry Ivan Anthony Canfield

Defendants: Premier Healthcare, St. Joseph Candler Urgent Care, et al.

Dear Clerk of Court,

Please find enclosed my pro se complaint filed pursuant to Title VII of the Civil Rights Act of 1964 and other applicable federal statutes. I am submitting this complaint following receipt of a Right to Sue letter issued by the Equal Employment Opportunity Commission on April 6, 2025. The complaint includes allegations of unlawful discrimination based on race and unlawful retaliation for protected activity, culminating in my termination in July 2024. I respectfully request that the Court file this action and allow me to proceed with this matter. Additionally, I ask that the Court permit joinder of additional parties as discovery

progresses and facts develop, consistent with Rule 20 of the Federal Rules of Civil Procedure.

Attached please find:

- The completed civil complaint form with exhibits

- Civil cover sheet

- A copy of the EEOC Right to Sue letter

Thank you for your time and attention to this matter.

Respectfully,

Larry Ivan Anthony Canfield

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
LARRY IVAN ANTHONY CANFIELD, individually and on behalf of others similarly situated,
Plaintiffs,
v.
PREMIER HEALTHCARE, LLC;
ST. JOSEPH CANDLER URGENT CARE, LLC;
DOES 1 through 10, inclusive,
Defendants.
Case No.: (To be assigned)
COMPLAINT FOR DAMAGES
1. Discrimination in Violation of Title VII of the Civil Rights Act of 1964
2. Retaliation in Violation of Title VII
3. Wrongful Termination in Violation of Public Policy
DEMAND FOR JURY TRIAL

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. 1331 and 42 U.S.C. 2000e-5(f)(3) because the
claims arise under federal law.
2. Venue is proper pursuant to 28 U.S.C. 1391(b) because the acts and omissions giving rise to these claims
occurred within this judicial district, and Defendants conduct business in this district.

## II. PARTIES

3. Plaintiff Larry Ivan Anthony Canfield is an individual and a resident of Richmond Hill, Georgia.
4. Plaintiff brings this action individually and on behalf of others similarly situated who have been subjected
to similar discriminatory and retaliatory practices by Defendants.
5. Additional plaintiffs may be joined as their identities and claims are ascertained, subject to the provisions of
Rule 20 and Rule 21 of the Federal Rules of Civil Procedure.
6. Defendant Premier Healthcare, LLC is a business entity licensed to do business in Georgia and operating in
this judicial district.
7. Defendant St. Joseph Candler Urgent Care, LLC is a healthcare entity operating within this judicial district.
8. Plaintiff is unaware of the true names and capacities of DOES 1 through 10, inclusive, and therefore sues

these defendants under fictitious names. Plaintiff will amend this complaint to allege their true names when
ascertained.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity
Commission (EEOC).

10. On or about April 6, 2025, the EEOC issued a Notice of Right to Sue.

11. This complaint is filed within 90 days of receipt of the Right to Sue letter.

## IV. FACTUAL ALLEGATIONS

12. Plaintiff began employment with Defendants on or about August 2021.

13. During his employment, Plaintiff was subjected to unlawful discrimination based on race and retaliation.

14. Plaintiff opposed or reported the discriminatory behavior internally to management or HR on or about
January 2024.

15. In retaliation for Plaintiffs opposition to discriminatory conduct and his defense of a fellow employee who
was being subjected to unlawful discrimination, Defendants undertook a series of adverse employment actions against Plaintiff. These included issuing unwarranted and fabricated disciplinary write-ups, subjecting Plaintiff
to heightened scrutiny not applied to similarly situated employees, undermining Plaintiffs work performance
through false accusations, and creating a hostile work environment. Defendants also took steps that had a
tangible and detrimental impact on Plaintiffs professional standing and career trajectory, including restricting
advancement opportunities and damaging Plaintiffs reputation within the workplace and the broader medical
community in the geographic area where Plaintiff resides and works. These retaliatory actions culminated in
Plaintiffs unlawful termination in or about July 2024.

## V. CAUSES OF ACTION

Count One: Discrimination (Title VII 42 U.S.C. 2000e et seq.)

18. Defendants discriminated against Plaintiff based on race in violation of Title VII.

Count Two: Retaliation (42 U.S.C. 2000e-3)

19. Plaintiff engaged in statutorily protected activity under Title VII.

20. Defendants retaliated against Plaintiff by taking adverse employment actions, culminating in termination.

Count Three: Wrongful Termination in Violation of Public Policy

21. Plaintiff was terminated for opposing unlawful discrimination, a violation of public policy.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against

Defendants as follows:
- Back pay, front pay, and lost benefits;
- Compensatory and punitive damages;
- Reinstatement or, in the alternative, front pay;
- Emotional distress damages, including compensation for mental anguish, humiliation, and reputational harm;
- Attorneys fees and costs pursuant to 42 U.S.C. 2000e-5(k);

- Pre- and post-judgment interest;
- Injunctive and declaratory relief as warranted;
- Any other relief the Court deems just and proper for Plaintiff and others similarly situated.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

VIII. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable

opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.

I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: *6-4-25*

Signature of Plaintiff

Printed Name of Plaintiff *Larry Canfield*

Respectfully submitted,

Larry Ivan Anthony Canfield
657 Saint Catherines Circle
Richmond Hill, Georgia 31324
Phone: 912-660-6184
Email: tonycanfield38@gmail.com
Pro Se Plaintiff

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Savannah Local Office
7391 Hodgson Memorial Drive, Suite 200
Savannah, GA 31406
(912) 358-2810
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/06/2025

**To:** Mr. Larry Canfield
657 Saint Catherine Cir.
Richmond Hill, GA 31324
Charge No: 415-2024-01547

EEOC Representative and email:     Davena Moore
Federal Investigator
davena.moore@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 415-2024-01547.

On behalf of the Commission,

Digitally Signed By: Jennifer Bessick
03/06/2025
Jennifer Bessick
Savannah Local Office Director

**Cc:**
Steven Sellars
Premier Health Consultants LLC
10319 Jefferson Hwy
Baton Rouge, LA 70809

Allison C. Felps
Premier Health Consultants LLC
10319 Jefferson Hwy
Baton Rouge, LA 70809


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice.** Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice.** Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file,** submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 415-2024-01547 to the

District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30, Atlanta, GA 30303.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 415-2024-01547 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30, Atlanta, GA 30303.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

From: Larry Canfield <lcanfield@phcurgentcare.com>

Sent: Wednesday, February 7, 2024 2:51 PM

To: Jared LeDoux <jledoux2@phcurgentcare.com>

Cc: Jessica Louque <jlouque@phcurgentcare.com>

Subject: Re: 2/7/24- questions to HR about disciplinary actions

I have been disciplined. I accept that and moving on.

I am simply asking questions in regards to the investigation process ensuring that my Rights have not been violated. I am not accusing anyone of anything. I am just inquiring on timeline and how facts in this matter were obtained. Through the meetings of what was told to me and also the disciplinary action of others. Jenny Marsh made it clear that ANY disciplinary action that takes place is relayed and closely followed by Human Resources. Given this information, I feel as if you would know all the facts and could answer quickly. But, I will layout the facts first as follows from my understanding and timeline of events.

I am not asking what happened to Lasarah. But this is what I know.

1-6-24

Lasarah was disciplined for a "slowing the flow" incident. It had already taken place by Management at a previous time in regards to another incident. I asked to slow the flow due to the number of people coming in on 1-6-24. I was told by Lasarah that she does not want to be disciplined again for taking this action. I asked her about the incident that got her in trouble which I can explain in more detail if needed. I asked if any managers were present that day. She explained that no management was in the office. I asked how was she disciplined. She explained that she was told that it was "not what you said, but how you said it" disciplinary action. I asked, so management was not present and did not hear the conversation that took place but they knew how you said it? She explained yes. She explained that the Mother of the patient was a SJC employee/staff member and was going to ensure that Lasarah get written up.

Lasarah has been with the company since Richmond Hill was opened. She knows what she is doing. I knew with this

interaction with management that she would be looking for employment elsewhere. Lasarah explained that she "knows how things work around here" and stated that she had already started looking for employment elsewhere.

Knowing that disciplinary action had already taken place and I cannot find out any facts nor did I want to know the facts. I sent a text to Angie Odom (excuse the grammar)- "Could you check into Lasarah getting written up about slowing the flow when Erica told her to last time? Because we are not slowing the flow because she said she got written up last time she did it even though she was doing what she was told by Erica and Angie T?" This was just to ensure management did exactly what they should have done because of incidents in the past.

I personally have been lied to by management and could have been arrested because an incident with a Business license in Hinesville if you would like more details about that also. So, I have concerns about Management.

1-7-24

I received a text from Jenny to "....stay in your lane..." I have never asked for details about what happened or reversal.

1-17

I received a notification of Meeting to review of policies and issues affecting the workplace on 1-19-24. I believe it is from me asking about Lasarah's issue.

1-19-24

Many accusations were given of what I had said or done in the workplace in just recent months. As far as venting or other concerns in the office. Some of which were only with Site lead or other Providers. So if someone is overhearing such conversations and not personally reporting it if they are part of my conversation, they would have no idea what I was actually talking about. They may have some idea but not the pressures or understanding of what is really going on in the clinic(s). I asked Jessica Louque to obtain the list so that I can make an accurate rebuttal since none was given.

I did become heated during this time frame because I knew this is my CAREER. not just a job that are on the line. So, I did go overboard some in this regard. I sent an apology to Jenny Marsh, Dr. Perumal and Angela Odom for my behavior

in that respect.

I was also told that this is not the first incident that Lasarah has had and that the Patient's mother was NOT a St Joseph Candler employee. I explained in this portion that I had never asked about what happened, that it needs to be reversed, etc etc. I asked if another member of Management could look into the incident to ensure it was done correctly.

Before followup meeting with Dr. Perumal and Angela Odom, I had heard from a couple of employees that Management had been asking about me after 1-6-24 and if they personally had any concerns they wanted to bring forward.

1-26-24

I sent a note to Dr. Perumal, Angela Odom and Jenny Marsh. This can be produced if needed. I also had a follow-up meeting with Dr. Perumal and Angela Odom. They laid out my disciplinary action and that I need to do better. I accepted. At the end of the conversation, Dr. Perumal stated that "We have heard everything. Everything is being recorded" I did not question him at that moment.

I am not sure what date exactly, but we had the security people in the Richmond Hill office trying to assist on gaining Administration control of the security system in Richmond Hill. I am not sure details of what or why this was occurring, but the timing of events were very suspicious to me along with previous comments and events that transpired beforehand.

1-29-24

I sent an email to Dr. Perumal and Jenny Marsh asking about recordings. I was told that I was not being recorded.

Dr. Perumal and I had a phone conversation a couple days explaining that Management wanted me terminated for the incidence above. I explained that I will keep my head down and work.

Now- for why I am asking. I am again asking to ensure my Rights are not violated. I want to ensure that I have not been

recorded since I have heard someone disciplined for "not what you said but how you said it", the list of accusations against me that may likely be some overheard conversations with other individuals that may likely not be part of my conversations, and even hearing a statement that "everything is recorded" from the Medical Director.

I feel as if these actions are a Retaliation from Management against me by asking another Manager to look into a concern of a trusted employee. I was told that I cannot question Management. I did not question Managements decision. I questioned on how the investigation and disciplinary action was performed since they were not present. Leading to Disciplinary action of "not what you said, but how you said it". The statement that this is not Lasarah's first incident in what she had said needs to be looked into also. Does management have 2 receptionists confused with 1 another? I could see a recent receptionist that went to Part time saying something but not Lasarah

Please let me know if you are able to supply the answers to my inquiry after reading this email. If you are unable to, I will continue with what I have promised. I will keep my head down and work. I am just making sure my Rights were not violated in regards to my personal disciplinary action.

Thank you and have a wonderful week.

From: Jared LeDoux <jledoux2@phcurgentcare.com>

Sent: Wednesday, February 7, 2024 12:16 PM

To: Larry Canfield <lcanfield@phcurgentcare.com>

Cc: Jessica Louque <jlouque@phcurgentcare.com>

Subject: RE: 2/7/24- questions to HR about disciplinary actions

Mr. Canfield,

The memorandum that was drafted and delivered to you was dated January 19th and filed with HR within your personnel record after Ms. Marsh reported meeting with you on that day. I am not aware of any evidence of behavioral

or performance issues that was presented to you that in any way suggests that it originated from recordings of conversations that you had with any other team member. The questions that you have provided below, from my assessment, are either accusatory against management and/or seeking to deflect from any corrective action that has been delivered to you. If accusatory, you need to provide specific accusations with detailed information regarding such an issue. If deflecting, you are advised to provide a rebuttal to your memorandum. My understanding is that you have submitted one already but that you would like Ms. Marsh to provide you with a listing of the items that she reviewed with you. We have requested this from Ms. Marsh and can relay that to you. Beyond that request, you will need to clarify how you would like me and my department to assist you.

Best,

Jared LeDoux, Ph.D., SPHR, BCC | Vice President, Human Resources

4456 Arnold Lane | Baton Rouge, LA 70809

Ph: (225) 214-9347 ext. 4062 Email: jLeDoux2@phcurgentcare.com

www.UrgentCareOpportunities.com

From: Jessica Louque <jlouque@phcurgentcare.com>

Sent: Wednesday, February 7, 2024 8:45 AM

To: Jared LeDoux <jledoux2@phcurgentcare.com>

Subject: FW: 2/7/24- questions to HR about disciplinary actions

Jessica Louque, PHR

Human Resources Director

4456 Arnold Road | Baton Rouge, LA 70809

Ph: (225) 214-9352  Ext 4128 | Fax: (225) 442-1609 Email: jlouque@phcurgentcare.com

www.UrgentCareOpportunities.com

September 4, 2024

Davena Moore
U.S. Equal Employment Opportunity Commission
7391 Hodgson Memorial Drive, Suite 200
Savannah, GA 31406-2579

**Rebuttal to Position Paper**
**Charge No. 415-2024-01547**

June 2021, I accepted a position with Premier Health as a Physician Assistant to work in Southeast Georgia to mainly work in the Hinesville and Richmond Hill, GA offices of St. Joseph Candler Urgent Cares.  Working other clinics, such as Pooler, Pooler Campus, Savannah, Rincon, and Statesboro, within the organization did occur.  Most of my time initially was at the Hinesville clinic.  A position later opened for the Richmond Hill office where I worked the majority of the work schedule until Premier Health acted on the separation clause of my contract.  When I reference "Premier", I am referring to the Partnership of Premier and St Joseph Candler Urgent Care.

The following is outline of events that occurred that initiated a claim with the EEOC:

This text message to Angie Odom, NP started a chain reaction of events that will be explained in detail with documentation



"Lasarah Jones was disciplined for a "slowing the flow" incident. It had already taken place by Management at a previous time in regards to another incident. I asked to slow the flow due to the number of people coming in on 1-6-24. I was told by Lasarah that she does not want to be disciplined again for taking this action. I asked her about the incident that got her in trouble which I can explain in more detail if needed. I asked if any managers were present that day. She explained that no management was in the office. I asked how she was disciplined. She explained that she was told that it was "not what you said, but how you said it" disciplinary action. I asked, so management was not present and did not hear the conversation that took place but they knew how you said it? She explained yes. She explained that the Mother of the patient was a SJC employee/staff member and was going to ensure that Lasarah get written up.

Lasarah has been with the company since Richmond Hill was opened." Word for word Taken from email sent to Premier Health.

Lasarah explained that she asked Erica Smith on a previous date than 1-6-24 to perform a "slow the flow" action which means that there are was an increased wait time at the clinic in which the Front desk staff notifies incoming patients that there is a long wait and can either be placed on a list to receive a call back to when they can be seen that day or schedule another day. Lasarah was advised by Erica Smith that she could perform this action in office. The above incident occurred with the Mother, SJC(St Joseph Candler- which is the hospital group that owns the buildings/name of the Urgent Cares) of a

potential patient.  Lasarah called Erica Smith immediately to report the phone call that occurred with the Mother of the potential patient.  Ms Lasarah Jones was then disciplined after this interaction.

Lasarah had been disciplined by Jenny Marsh and Erica Smith.

After hearing what happened on 1/6/24, I was concerned that Lasarah Jones had been targeted by Jenny Marsh and Erica Smith to take the fall for the above events when she was given direction from her manager, Erica Smith that she could perform the action of "slowing the flow".

Concerned with this issue, I messaged Angie Odom, NP- Ms Odom is the Provider that hired me and holds a Management position in Southeast Georgia for Premier Health.  She has explained in Provider meetings, with Jenny Marsh and other management present, that we can go to her, Angie Odom, with issues/concerns.  The Providers in the St Joseph Candler Urgent Care market look to Ms. Angie Odom, NP as a Provider Supervisor which may not be her title, but the Providers look to her for this role.
The concern on 1-6-24 was that an employee was potentially disciplined for following direction from Management that was not present in office where the incident occurred.  If the events were reported to me with omissions or different events by Lasarah Jones that warranted a disciplinary action, then the correct action took place.  But, I raised concerns because of the potential for an employee being targeted by Management because an incident involved staff from St Joseph/Candler Hospital which holds a contract with Premier Health.  I felt that Lasarah was going to be the scape goat as a single black female mother by her white Managers to take the fall for doing what she was told by Management.  That Management was going to discipline an employee BEFORE St Joseph Candler reached out to show that they, Management, already had taken care of the issue.

On January 7, 2024 I received the following messages from Jenny Marsh



January 17, 2024 I received an email to attend a "Policy Review" Meeting with Jenny Marsh, Angela Odom, NP, and Dr. Sathish Perumal, Medical Director.
I questioned whether a representative from Human Resources was going to be in the meeting and was told that only the 3 listed along with myself were going to be part of the meeting. I felt this meeting was going to be strictly about the recent incident in regards to Lasarah Jones and me asking Angela Odom, NP/Manager to look into the issue.

January 18, 2024- Lasarah chatted with me that she put her 2 weeks notice in and wanted to let me know that she felt targeted. She expressed that her feelings and what she has seen with others that she would continue to be a target until she was either terminated or quit.

January 19, 2024
During the meeting, I was accused of numerous other issues that had nothing to do with me questioning about "looking into" the concern I had. I felt attacked and my career and license were on the line. I was upset and raised my voice about the issues. I never cursed nor did I go over the top with my words. No letters of concerns from several employees were presented by Management as stated from Jenny Marsh.

January 26, 2024- I sent a note to Dr Perumal, Angie Odom and Jenny Marsh that I need to do better mainly in regards to how I raised my voice because of the feeling of being attacked and my career(not just a job) was on the line. Savannah is a small region and St Joseph Candler is a Huge part of the Medical community in the area. If I run into issues with them, it would jeopardize numerous job opportunities if I was forced to find new employment.
Dr. Perumal stated that " we have heard everything. Everything is being recorded"
There was security people in our clinic looking into a software concern from what I recall around this time. From my understanding, Management was ensuring they had remote access to view the clinic from remote locations.

1-29-24 I sent an email to Dr. Perumal and Jenny Marsh about surveillance. Dr Perumal called me that day or day after stating that there are no recorded conversations. He also explained that Management wanted me terminated for asking to look into the Lasarah incident. He also explained that I needed to keep quiet, do my job and not take my time seeing patients. That he heard that I stated that I wanted to take my time with patients and that delay in treatment was grounds for termination. First, I wanted to "take my time" was actually the TRUE TIME to see patients along with still being shaken up about the threat of my job. Second, it is an Urgent Care. Patient are seen same day and treated same day. This is not a delay in treatment. Delay in treatment would be actually postponing minutes or hours after an Emergency Situation. Which I did not and the office is not an Emergency Room. Or, postponing someone from being seen for an Urgent Concern that needed to be taken care of that day. Which I also took care of everyone that walked in the door with care and compassion that I always do.

Beginning of February 2024, I had a conversation with Lasarah Jones. She explained that she was sorry that I was getting written up for trying to shine the light on her issue. She explained that she had not went through her exit interview yet and would let them know that she felt racially discriminated against. I explained that she has every right to let them know and hopefully Human Resources would actually investigate what was going on in this area. That they are Louisiana and are not in the local area to actually see what is happening in the clinics.

February 7, 2024. I sent a letter of apology for my actions during the meeting. It was not an apology for any of the accusations. I reiterated to Human Resources about the timeline of what occurred and my concern that I was being retaliated against.
Jared LeDoux Vice President of Human Resources replied that I was just trying to "deflect from any corrective action that has been delivered" (from email). There was no interest or concern by HR at this time about Retaliation or concern that Lasarah Jones was targeted by Management.

February 8, 2024 I receive the list of original accusations by Management that had not been listed in my Policy Review write up. No mention of each accusation was presented in said write up for Policy Review.

> **From:** Jenny Marsh <jmarsh@phcurgentcare.com>
> **Sent:** Thursday, February 8, 2024 4:10 PM
> **To:** Larry Canfield <lcanfield@phcurgentcare.com>
> **Cc:** Jessica Louque <jlouque@phcurgentcare.com>
> **Subject:** Re: Memo
>
> Good afternoon Tony!
>
> You requested a list of complaints that were submitted on you that led to the memo being sent and meeting. I have outlined them below:
>
> - Talks poorly about management team and how he would do things differently in front of staff
> - Verbally critiques staff in front of other staff
> - makes negative remarks about Premier and employees of Premier
> - complains about working during his shifts and how he doesn't want to be here
> - talks about his personal issues in front of staff
> - "has berated" staff about policies and procedures, ex. if there is a change in day-to-day procedure (x-ray down)
> - He tried to make it seem as if management hasn't controlled situations and "pits" staff against management
> - becomes argumentative when questions are asked to him
> - Has involved other providers in negatively discussing management
> - Discussing it asking about other employees write ups
>
> I did previously forward your follow up email to HR following the 1/19 meeting, prior to the 1/26 meeting.
>
> Regards,
> Jenny

At this time, I will need to submit a rebuttal to each of these accusations because of outside party looking in rather than staff that worked with me day to day.

We as Providers discuss with other Providers the day-to-day patients that walk into the clinic. There have been numerous True Emergencies walk into the clinics. Urgent Care is just a Family Medicine type office that takes care of an issue your regular Provider cannot take care of that day. There is a conception in the community that Urgent Cares can handle Emergencies OR an in-between Regular Medical Office and Emergency Room. Neither is the case in regard to Urgent Care Centers. Premier has not and continues to not educate the Public nor do they have practiced Protocols to deal with Emergency concerns. I along with other Providers have expressed our concerns with each other, with Management, with Angela Odom,NP and the Medical Director. They listen and tell us that they hear us and listen to suggestions, but there was no implementation of ways to improve guidelines and handling of Emergencies. I along with other Providers have had discussions with one another that something bad was going to happen. That 1 or numerous Providers were going to end up with a lawsuit or worse, someone would die because they went to the wrong location. Medical Assistants, Radiology Techs, Receptionist, Management and other Providers have heard and overheard these kinds of conversations. If reports are sent to management that I was talking poorly of Management or pitting staff against Management or have other Providers discussing negatively about Management this is the main concern. Israel "Zach" Hagains, Ryan Plowman and Robert Sizemore are Providers and all white men that have "negatively" stated similar issues about Management. None of which have been written up while I was employed. Angie Thoerner would even state "Fuck them" on numerous occasions without being written up. All above Providers work at numerous clinics. Robert Sizemore was mainly in Richmond Hill clinic before leaving the company. He then returned to work mainly at the Pooler Campus location. Angie Thoerner was the main Provider working opposite schedule of me most of the time. Angela Odom, NP would sit and chat about numerous issues going on with other Providers and staff and numerous clinics in front of other Providers and staff at varying clinics.

In regards to Premier staff/management in Louisiana, I have met a couple of them when they visited the area. I had no real conversation with any of them. I don't know who they are or even what they actually do for the company. I have not sat down and spoke negatively about them. I did not know that 1 Board Member left the company, and another was let go from the Company. I don't know why he was let go and part of conversation, not gossip, within the Savannah area market for Premier. I know of no one being written up for such conversation but me.

Richmond Hill was my main office to practice in. While employed, we maintained a very high Net Promoter Score (NPS) listed below. This was even after being disciplined. There have been times that Management has told front desk staff and Medical Assistants/Nurses/Radiology Techs at the Richmond Hill office that they were doing their job wrong in regards to intake of patients and handling patient communication in person and by phone. I along with others posed the question of how they were doing their job wrong with #1 NPS scores in the region and Top 5 across all markets in Premier

organization. There were no added comments or negative comments after these questions. Again, I know of only me being written up for such questioning. Angie Thoerner stated, "that as long as my NPS scores are high that they can go fuck themselves". This type of language and wording was never used by me. These types of statements were said in front of the same staff that were reporting on me to Management. Angie Thoerner, NP was never written up nor verbally warned. I state the "same staff" because incidences were reported of what was happening in the Richmond Hill office. The question was posed by staff and Providers because the Richmond Hill clinic consistently stayed Top in the Region and Top 10 across all Markets for multiple weeks/months.

I never complained about being at work and not being there. I would even make a comment that "work is a break from the amount of work that I have to do at home". Israel "Zach" Hagains is the main Provider that would continuously complain about being at work and even about why certain patients were checking in/signing in remotely to be seen. He has never been written up or officially disciplined for these comments/actions.

I have not berated employees in the clinic. If an Xray machine is down, an Xray machine is down. There is nothing that can be done about it. Management has instructed front desk staff not to tell patients or even post signs that our Xray machine was down. Receptionist were instructed to check patients in normally and have Providers tell the patient the Xray machine was down. I asked, "why can we not tell patients up front that the Xray machine was down". I was put in a position with 2 different patients to direct them to another clinic to have their Xray done. Both patients stated they wished they knew it was down before hand so that they could have just went to the other clinic rather than wait to be seen, be seen and then be directed to another clinic to sit and wait to have an Xray done. Questions was posed to Management and their stance was that the Front Desk if not Medical and cannot make the decision if an Xray was needed or not. But the question was, "why couldn't we tell the patients before they were seen that the machine was down at all?"

Site Lead for Richmond Hill is great. Carin Armstrong is her name. When she is able to be at the clinic, things run well, and she handles the problems. I have asked Management that if Management is not in the office, what is to be done with in house concerns. Staff and Providers have been told to take a message and a member of the Management Team will handle it at a later time. Patients are in the office and want to speak to someone directly with their concerns. Providers hear them out and if there is a solution, we try to handle it before it reaches Management. This is what I have done and what patients expect. Yes, there are things that Providers will pass along to the Management Team to handle. This action does not mean the I personally feel that Management was not handling things. Again, the main concern has always been the Emergencies walking into the office.

Pitting staff against management issues. Carin Armstrong had a strong Team in Richmond Hill. I did not witness staff/Providers against her. There were decisions that were passed down to her to delineate by her Superiors and she implemented them. Providers and staff were scheduled 12 hour shifts. We were all expected to stay in office until last patient left the clinic. If a patient checked in 1 minute before closing time, we had to stay over the 12 hours to see the patient. Comments were made by numerous staff and Providers that Management need not complain about overtime hours when patients were checking in last

minute and everyone had to work over the 12 hours per day.  Providers were never talked to about overtime issues, but the staff were consistently monitored and coached.

Staff has come to me with concerns about the office, patients and Management.  I listen to their concerns.  This does not mean that I am pitting staff against Management either.  This is listen to a coworker and let them know that I can listen to them.  They are also directed by me to let management know and take the proper steps if they have a true concern that they need addressed.  Carin was great at handling things and would pass things up the chain of command if it was something that she could not address directly.

Talk about personal issues.  I would have conversations just like anyone about how the kids were doing, how the wife was doing or just things in my life.  So am I to just talk about work alone and not discuss anything about life in general.  No staff or Providers were written up or disciplined other than me discussing their life.

Argumentative when asked a question.  I along with other Providers and staff have asked questions of why certain things are done.  This does not mean I am arguing about an issue.  Discussion vs Argumentative is taking out of place here.  Are we not aloud to have an answer of why certain things are done when the office is working well together and performing better than any other clinic in the Market?  Again, I am the only Provider than has ever been written up with posing a question to Management.  I have been skeptical of the current Management and pose questions rather than argumentative because of being lied to about a Business license in the past.  A sheriff showed up to close the clinic down in Hinesville, GA and I gave my name to the sheriff who then told me that we could continue working as long as we handled the expired Business license that day.  I asked Management if they took care of it that day and they did not.  A license was not secured until almost the close of Hinesville Business office that day.  I had worked most of the following day thinking the business license had been secured.  If the sheriff had returned the next day and saw we did not have the business license, I would have been arrested.  There was no communication between me or other staff that was working that Clinic the following day that we were in fact working without the proper Business license secured or that other arrangements had been made with the Business license office.

I am not perfect by any means, but I am the only Provider that has been written up for these type concerns.  I also do not think any staff has been written up for similar issues.  Just in the Richmond Hill office alone.  Joseph Thomas, white male/Radiology Tech, who would consistently talk negative about staff, management, Providers and patients without getting even a warning.  He also no-called no-showed several times while I was employed without being disciplined by the same Management Team.  Carin Armstrong attempted to have him disciplined but was intercepted by her Superiors before it was sent to Human Resources.  Jillian Bensen-Eder, white female/Athletic Trainer, would continuously question what Management by Premier was doing, talk down about staff and Providers behind their back, and pitting staff and Providers against one another. Jillian explains to everyone that she does not work for Premier and that she works for St Joseph Candler.  This is true but she has to work with Premier staff.



**Week Ending: 04/27/2024 (Premier Top 10 Ranking)**

| Top 10 Performers | | |
|---|---|---|
| | Overall Rank | |
| Clinic | Door to Door | NPS |
| 1 Lake Urgent Care Highland/Lee | 22 | 91 |
| 2 Lake Urgent Care Denham Springs North | 28 | 90 |
| 3 LCMC Urgent Care - Algiers | 30 | 96 |
| 4 SJC Urgent Care - Richmond Hill | 28 | 93 |
| 5 Rapides After Hours Alexandria | | 94 |
| 6 LCMC Urgent Care - Lakeview | 23 | 67 |
| 7 Mount Carmel Urgent Care - Grove City | 35 | 92 |
| 8 Lake After Hours Perkins | 35 | 87 |
| 9 Lake Charles Primary Care and Wellness | - | 100 |
| 10 Lake After Hours Zachary | 29 | 85 |

**Week Ending: 04/27/2024 (SJC Market Ranking)**

| SJC Urgent Care | | | |
|---|---|---|---|
| Overall Rank | Clinic | Door to Door | NPS |
| 1 | SJC Urgent Care - Richmond Hill | 28 | 93 |
| 2 | SJC Urgent Care - Hinesville | 36 | 95 |
| 3 | SJC Urgent Care - Heartwood | 28 | 90 |
| 4 | SJC Urgent Care - Statesboro | 30 | 86 |
| 5 | SJC Urgent Care - Rincon | 37 | 91 |
| 6 | SJC Urgent Care - Savannah | 43 | 85 |
| 7 | SJC Urgent Care - Savannah Telemedicine | 34 | 94 |
| 8 | SJC Urgent Care - Bluffton | 35 | 88 |
| 9 | SJC Urgent Care - Pooler Campus I-16 | 45 | 87 |
| 10 | SJC Urgent Care - Pooler I-95 | 37 | 70 |

**Week Ending: 04/27/2024**

**(Clinic Ranking throughout All Premier Markets)**

## 4 out of 82

February 8, 2024.  Sent email to Angela Odom about taking off Feb 15-18.  I was scheduled and was ignored.  No reply.  I was always responded to before the disciplinary action.  But felt ostracized after the fact.  We were receiving schedules 1 week or less for the following week to only be expected to try and find someone to work the schedule.  There were no other dates that could be switched with other Providers because we were only getting schedules 1 week at a time.

March 1,2024- Sent an official rebuttal stating that this is just retaliation for asking another member of Management to look into a write up.  I never asked for it to be overturned nor

asked the results of another write up or details of the write up. I asked Human Resources to remove my write up. They refused.

April 29, 2024 I had another meeting scheduled by Human Resources with Jenny Marsh and Human Resources representative Keana Mayo-Sias, and Paul Cheramie, Vice President. I was given my 90 day notice of being discharged from Employment by Premier. I explained that this is all from Harassment (not only for me), Discrimination (within the company) and retaliation against me. Premier was trying to use a clause to separate employment. Paul Cheramie explained during this interaction that I went back to doing what I was originally accused of doing. This is absolutely false. I was then asked if there were any questions or comments. I stated that I would like HR and Premier to look at the Savannah area market and actually look into what is actually going on at each and every clinic in regard to upper Management, that are all white, and was told by Paul Cheramie that they already have looked into everything.

90 days- During the 90 days looking into employment, I was only offered 2 positions fortunately and took 1. Even lower paying positions were not offering me a position at their Medical Office.

Final 2 weeks of employment, end of July 2024. I was scheduled <72 hours. I asked HR and Payroll if I was going to be paid 72 hours because my contract states that I am paid for 72 hours of work. I was told that I had to use PTO hours to cover the missing hours. Robert Sizemore, NP had a similar issue in the past and was paid 72 hours without using PTO hours. I requested to add this to Racial Discrimination against me.

In conclusion, I feel as if conversations and overhead conversations may have been twisted to be malicious. And specific allegations are fabrication to add additional allegations against me. Similar or more vicious conversations, overheard conversations and actions by other Providers and staff did not result in a write up or even verbal warnings. Retaliation was the main precursor that led to my separation and still could impact my future employment if I change positions to another company, especially within St Joseph Candler system. Lasarah Jones was targeted as a Black Female to take the blame for an event with a member of St Joseph Candler Hospital. Management instructed Lasarah Jones to "slow the flow". She is an experienced Receptionist with over 3 years experience with Premier/St Joseph Candler Urgent Care and she did and knew her job very well. She was well liked and a hard worker. If EEOC continues their investigation, you will find that Lasarah was not the original person that dealt with the patient that came into the office, Lasarah fielded the call from the mother of the potential patient, Lasarah answered all questions and relayed the message to upper Management which she was disciplined for, and that I was retaliated against pointing out the concern for an trusted hard working employee was doing her job. I would like to urge the EEOC to investigate not only my claim but other issues within Premier/St Joseph Candler Urgent Care. I have heard from Site Leads/Office Managers under the Upper Management of the Savannah area (Jenny Marsh, Erica Smith and Katie Gay) that there are other concerns. This would be hearsay by me at this point. But I have

been urged to ask EEOC to look into what is going on in the Savannah area not only for what happened with this incident but other concerns that people have been scared to step up in fear of losing their job.