UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

LARRY IVAN ANTHONY CANFIELD, Plaintiff

v.

PREMIER HEALTHCARE and ST. JOSEPH CANDLER URGENT CARE, Defendants.

Civil Action No. 4:25-cv-132

PLAINTIFF'S OPPOSITION TO DEFENDANT ST. JOSEPH'S/CANDLER URGENT CARE
CENTERS, LLC'S MOTION TO DISMISS

---

Introduction

Plaintiff Larry Ivan Anthony Canfield ("Plaintiff"), proceeding pro se, respectfully submits this
Opposition to Defendant St. Joseph's/Candler Urgent Care Centers, LLC's ("Defendant" or
"SJCUC") Motion to Dismiss. Defendant seeks dismissal under Rules 12(b)(6) and 12(e) by
claiming (1) it was not Plaintiff's employer, (2) Plaintiff failed to exhaust administrative
remedies by not naming it in his EEOC charge, and (3) the Complaint lacks sufficient factual
detail. Each argument is without merit.

As shown below, St. Joseph's/Candler Urgent Care jointly operated the facility where the
discrimination and retaliation occurred, directly controlled essential employment conditions, and
benefited from Plaintiff's work. Moreover, the EEOC was aware that St. Joseph's/Candler was
the principal operating company, and Defendant therefore had constructive notice of the charge.
Plaintiff's Complaint meets the required pleading standards and alleges viable claims for
retaliation and discrimination under Title VII. Dismissal is therefore improper.

---

Background and Relationship Between Premier Healthcare and St. Joseph's/Candler Urgent Care

St. Joseph's/Candler Urgent Care ("SJCUC") is the majority owner and operator of the urgent-
care centers where Plaintiff worked. Each facility operated entirely under the St.

Joseph's/Candler brand, signage, and patient-facing identity. Every patient entering the building reasonably believed they were receiving care from St. Joseph's/Candler itself, not from a third-party contractor.

To staff and operate its urgent-care centers, SJCUC entered into a contractual relationship with Premier Healthcare Consultants, LLC ("Premier"), which supplied the bulk of personnel — front-desk receptionists, medical assistants, nurses, and licensed providers. St. Joseph's/Candler directly employed and assigned athletic trainers to those same facilities. These athletic trainers worked daily within the same clinic environment, providing treatment assistance, coordinating referrals, and interacting with patients and Premier's staff. They functioned as on-site representatives of St. Joseph's/Candler, exercising clinical oversight and coordinating patient-care functions alongside Premier's personnel.

This day-to-day integration shows that St. Joseph's/Candler and Premier jointly controlled essential terms and conditions of employment. St. Joseph's/Candler owned and branded the facilities, dictated workplace standards, and benefited from the services rendered by all staff — regardless of which entity issued paychecks. Premier supplied workers but operated under St. Joseph's/Candler's umbrella, policies, and supervision. The two entities therefore constituted joint employers, or at minimum, an integrated enterprise under Title VII.

---

I. Plaintiff Properly Exhausted Administrative Remedies

Defendant argues dismissal because Plaintiff's EEOC charge listed "Premier Health Urgent Care" instead of "St. Joseph's/Candler Urgent Care Centers, LLC." However, this argument fails under well-established Eleventh Circuit precedent recognizing that Title VII's naming requirement is liberally construed to serve the statute's remedial purpose, not to create a procedural trap for pro se or misidentified complainants.

Under Virgo v. Riviera Beach Associates, Ltd., 30 F.3d 1350 (11th Cir. 1994), a Title VII claim may proceed against an entity not formally named in the EEOC charge if (1) its interests are substantially identical to those of the named party, (2) it had actual or constructive notice of the EEOC proceedings, and (3) it shared in the employment relationship. Each factor is satisfied here:

1. Substantially Identical Interests. Premier Healthcare Consultants staffed the clinic exclusively for St. Joseph's/Candler, which owned, branded, and operated the urgent-care centers. Both

entities shared a single business interest — providing patient care under the St. Joseph's/Candler name — and would inevitably coordinate legal and HR responses to discrimination complaints.

2. Notice and Participation. The EEOC understood that St. Joseph's/Candler was the umbrella company. The charge used the trade name "Premier Health Urgent Care," the public-facing term describing the joint facility. Because St. Joseph's/Candler maintained on-site staff (athletic trainers and administrative personnel) and exercised oversight within the facility, it had constructive notice of the EEOC filing and opportunity to participate in conciliation.

3. Shared Employment Relationship. Plaintiff worked in a St. Joseph's/Candler facility, followed its protocols, and interacted daily with its employees. The alleged discrimination and retaliation occurred within that environment, benefitting St. Joseph's/Candler's business.

Courts routinely excuse misnomers where the unnamed entity was clearly involved in or benefited from the employment relationship. See Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890 (7th Cir. 1981).* Here, dismissing the case on a technical naming distinction would contradict Title VII's remedial intent.

Therefore, Plaintiff fully satisfied the administrative-exhaustion requirement, and Defendant's motion under Rule 12(b)(6) should be denied.

---

II. Defendant Was Plaintiff's Employer Under Title VII

Defendant argues dismissal on the basis that Plaintiff was employed solely by Premier Healthcare Consultants and that St. Joseph's/Candler Urgent Care had no employment relationship with him. This argument ignores the integrated and interdependent manner in which the two entities operated and jointly controlled the urgent-care facility.

Under Title VII, the term employer is interpreted broadly to include entities that share or co-determine the essential terms and conditions of employment. The joint-employer doctrine recognizes liability where two or more entities exert significant control over the same employee's work. Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1359 (11th Cir. 1994).*

Here, SJCUC and Premier jointly supervised and operated the urgent-care center in which Plaintiff worked. SJCUC owned and branded the facility, established policies, and maintained on-site staff who coordinated care and monitored daily activities. Premier supplied clinical and front-office staff under SJCUC's direction, performing work that directly benefited SJCUC's patients and reputation. Both entities shared control over conditions, scheduling, and patient-care standards.

Because SJCUC exercised actual or constructive control over the working environment and profited from the services provided by Premier's employees, it qualifies as a joint employer under Title VII. See McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930 (11th Cir. 1987).* Even if SJCUC attempts to characterize itself as a "client site," its actions go far beyond a passive landlord relationship. These facts demonstrate operational integration and shared control, precluding dismissal at the pleading stage.

Whether SJCUC and Premier were joint employers is a question of fact inappropriate for resolution on a Rule 12(b)(6) motion. Layton v. DHL Express (USA), Inc., 686 F.3d 1172, 1177 (11th Cir. 2012).*

---

III. The Complaint Meets Federal Pleading Standards

Defendant next argues that Plaintiff's Complaint constitutes a "shotgun pleading." This argument mischaracterizes the filing and misapplies Rule 8(a). Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).* The Eleventh Circuit has repeatedly emphasized that pro se pleadings are to be liberally construed. Tannenbaum v. United States, 148 F.3d 1262 (11th Cir. 1998).*

Plaintiff's Complaint clearly alleges that he worked in a St. Joseph's/Candler facility, reported discriminatory and retaliatory conduct to HR in early 2024, and was later disciplined and terminated in retaliation for that protected activity. These allegations give fair notice of the claims and factual basis for relief.

If additional clarity were needed, the proper remedy would be leave to amend, not dismissal. Madison v. BP Oil Co., 928 F. Supp. 1132 (S.D. Ala. 1996).*

---

## IV. Plaintiff Plausibly Alleges Race Discrimination

Defendant claims Plaintiff failed to allege race discrimination. At the pleading stage, a plaintiff need not establish a prima facie case; he must only allege facts making discrimination plausible. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).*

Plaintiff alleges that he is multiracial, that he reported the discriminatory treatment of a Black female coworker, and that after this report he was disciplined and ultimately terminated, while others outside his protected class were not. These allegations permit an inference that race and protected opposition to discrimination were motivating factors in the adverse action.

Comparator and evidentiary details are developed in discovery, not at pleading. Chavez v. Credit Nation Auto Sales, LLC, 641 F. App'x 883 (11th Cir. 2016).*

---

## V. Plaintiff Plausibly Alleges Retaliation

Plaintiff alleges that after reporting discrimination to HR in early 2024, he was subjected to escalating discipline and was issued a 90-day notice of separation in April 2024, which was later used as a pretext to terminate him in July 2024. The use of this contractual clause so soon after his protected complaint supports a reasonable inference of retaliation. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322 (11th Cir. 1999).*

Whether the separation clause was legitimate or pretextual is a question of fact, not suitable for dismissal. Holland v. Gee, 677 F.3d 1047 (11th Cir. 2012).* The Complaint sufficiently alleges protected activity, adverse action, and causal connection, satisfying Title VII's standard.

---

## VI. Wrongful Discharge Under Georgia Law

Defendant correctly notes that Georgia generally follows the at-will employment doctrine. However, this doctrine does not preclude liability under federal law, including Title VII. Plaintiff

clarifies that his wrongful-termination allegations are asserted under Title VII's anti-retaliation and anti-discrimination provisions, not as a separate state tort. Clark v. Coats & Clark, Inc., 990 F.2d 1217 (11th Cir. 1993).*

Accordingly, even if the state-law aspect is dismissed as redundant, Plaintiff's federal causes of action remain fully valid. The gravamen of this case is not based on a common-law tort, but on violations of federal civil-rights protections that prohibit discrimination and retaliation in the workplace. Defendant's invocation of Georgia's at-will doctrine therefore provides no defense to liability under Title VII of the Civil Rights Act of 1964.

---

VII. Conclusion and Relief Requested

For the reasons stated above, Defendant St. Joseph's/Candler Urgent Care Centers, LLC's Motion to Dismiss is without merit. Plaintiff has properly exhausted administrative remedies, adequately alleged that Defendant functioned as a joint employer under Title VII, and presented sufficient factual matter to support plausible claims for race discrimination and retaliation.

At this preliminary stage, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in his favor. The issues raised by Defendant—including joint-employer status, knowledge of Plaintiff's protected activity, and the alleged contractual justification for termination—are questions of fact that should be resolved through discovery, not by dismissal.

As a pro se litigant, Plaintiff respectfully asks the Court to construe his pleadings liberally and allow reasonable opportunity to correct or clarify any technical or procedural deficiencies through amendment, consistent with Tannenbaum v. United States, 148 F.3d 1262 (11th Cir. 1998).* Plaintiff has made a good-faith effort to comply with the Court's rules and to present the facts truthfully and accurately to the best of his ability.

Accordingly, Plaintiff respectfully requests that the Court:

1. Deny Defendant's Motion to Dismiss in its entirety;

2. Allow this case to proceed to discovery on Plaintiff's federal claims of race discrimination and retaliation; and

3. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 3rd day of December, 2025.

Larry Ivan Anthony Canfield
Pro Se Plaintiff
657 St. Catherine Circle
Richmond Hill, GA 31324
Phone: (912) 660-6184
Email: tonycanfield38@gmail.com